1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SAMANTHA WILLIAMS,                          No. 23-cv-02585-DC-SCR

12                   Plaintiff,

13          v.                                    ORDER GRANTING IN PART
                                                  DEFENDANT'S MOTION TO DISMISS
14   UNITED PARCEL SERVICE, INC.,
                                                  (Doc. No. 13)
15                   Defendant.

16

17          This matter is before the court on Defendant United Parcel Service, Inc.'s ("UPS") motion

18   to dismiss. (Doc. No. 13.) Pursuant to Local Rule 230(g), the pending motion was taken under

19   submission to be decided on the papers. (Doc. No. 14.) For the reasons explained below, the court

20   will grant in part Defendant's motion to dismiss.

21                                **BACKGROUND**

22          Plaintiff Samantha Williams filed this employment action in the Sacramento County

23   Superior Court against Defendant UPS, her former employer, and Does 1–20 on August 14, 2023.

24   (Doc. No. 1-1 at 2.) On November 8, 2023, Defendant removed this action to this court. (Doc.

25   No. 1.) Defendant filed a motion to dismiss on November 15, 2023. (Doc. No. 3.) In lieu of filing

26   an opposition to that motion, Plaintiff filed the operative first amended complaint ("FAC") on

27   December 6, 2023, as a matter of course pursuant to Federal Rule of Civil Procedure 15. (Doc.

28   No. 9.) In her FAC, Plaintiff alleges the following.

                                        1

Defendant hired Plaintiff as a "Package Handler" in October 2008, at its hub in West Sacramento, California. (Doc. No. 9 at 6.) In January 2016, Plaintiff's supervisor, Brian Avery, singled Plaintiff out amongst her colleagues and criticized her for briefly using her phone while at work. (*Id.*) In February 2016, Avery "sexually assaulted and sexually harassed" Plaintiff. (*Id.*) Thereafter, Plaintiff reported the incident to human resources at UPS, but she was not contacted by anyone from that office. (*Id.* at 6–7.) Plaintiff continued to work under Avery's supervision following the incident. (*Id.* at 7.) Also in February 2016, a male UPS employee positioned his radio in front of his groin and made a sexual gesture in front of Plaintiff. (*Id.*) That same day, Avery made a similar gesture using a large tube package towards Plaintiff. (*Id.*)

In April 2016, Plaintiff went to human resources to report safety issues regarding the package conveyor belts. (*Id.* at 7.) Plaintiff also reported the perceived safety issues to the UPS Ethics Hotline. (*Id.*) Shortly thereafter, a part-time supervisor at UPS informed Plaintiff and her coworkers that there would be an audit because Plaintiff reported safety issues to human resources. (*Id.*) Thereafter, Plaintiff was "moved to an area away from the sort aisle for unloading packages." (*Id.*)

In early 2017, Plaintiff signed up to become a "package car driver" and completed trainings and tests associated with that position. (*Id.* at 8.) On June 8, 2017, Plaintiff began working as a probationary package car driver. (*Id.* at 9.) On June 16, 2017, a driver supervisor disqualified Plaintiff. (*Id.*) Plaintiff resumed driving utility vehicles after completing "retraining." (*Id.*)

In September 2018, Plaintiff was involved in an automobile accident while driving for UPS's West Sacramento Hub. (*Id.*) After retraining, Plaintiff continued to drive for UPS. (*Id.*) On December 10, 2018, Plaintiff was involved in a second automobile accident while "performing package car driving." (*Id.*)

On March 4, 2019, Plaintiff witnessed an employee shut off a conveyer belt because boxes were piling up and the situation became unsafe. (*Id.*) Plaintiff witnessed her supervisor, Matty Ford, yell at the employee for turning off the conveyer belt. (*Id.*) On March 5, 2019, Plaintiff and Ford "began yelling at each other" after the "boxes were up to [Plaintiff's] knees."

(*Id.*) Ford told another employee to clear the conveyer belt, and yelled at Plaintiff, "don't get your panties in a bunch." (*Id.*) On March 7, 2019, Plaintiff reported a "safety hazard" to human resources. (*Id.*) The next day, Plaintiff filed a complaint through the Occupational Safety and Health Administration ("OSHA") concerning "continuous safety issues and hostile intimidation." (*Id.*) A full-time supervisor confronted Plaintiff about her human resources complaint in front of coworkers, and Plaintiff reported this incident to a union business agent. (*Id.*)

On March 11, 2019, Plaintiff began working in the "Irregular Packages" area even though she requested a "switch with a lower seniority sort, which was denied." (*Id.*) The following day, Plaintiff met with the hub manager, a supervisor, and a shop steward regarding ongoing safety issues. (*Id.*) On March 13, 2019, Plaintiff provided a note from a chiropractor that stated she should not lift packages weighing more than 70 pounds. (*Id.*) Plaintiff's supervisors denied "the request to switch work areas based on the note." (*Id.*) A shop steward told Plaintiff that "assistance was only available in the irregular packaging area." (*Id.*)

On March 14, 2019, union representative Dale Wentz informed Plaintiff that he could not do anything about the supervisor's decision. (*Id.* at 10.) On March 15, 2019, Plaintiff filed a retaliation complaint with the Department of Industrial Relations and a grievance concerning missed wages, but she received no response. (*Id.*) On March 18, 2019, Plaintiff's chiropractor removed her work restrictions "due to concerns about payment," and Plaintiff returned to work as normal. (*Id.*)

Several days later, packages "were getting backed up and falling on the floor," and Ford asked Plaintiff "why she was holding up the line." (*Id.*) The following day, Plaintiff informed another human resources representative that she believed she was being harassed and retaliated against by Ford. (*Id.*) Plaintiff has repeatedly felt unsafe at her job and believes management does not care about the wellbeing of employees. (*Id.*) Plaintiff's male colleagues mocked her with a high-pitched voice. (*Id.* at 11.) Plaintiff's reports to human resources have gone unresolved. (*Id.*)

Plaintiff has been repeatedly passed up for promotions in favor of male colleagues with significantly less seniority than her. (*Id.*) Three male colleagues were hired in 2013 and 2014 and were promoted to full-time drivers before Plaintiff, even though she was hired in 2008. (*Id.*)

1    Plaintiff was subsequently injured and went on disability from November 2021 until

2    November 2022. (*Id.*) Plaintiff alleges Defendant failed to engage in the interactive process when

3    they offered Plaintiff jobs that were too far away from home (over 75 miles) and violated

4    restrictions by requiring Plaintiff to perform repetitive tasks. (*Id.*) In November 2022, Defendant

5    stopped communicating with Plaintiff, and Plaintiff believed she had been fired. (*Id.*) Plaintiff

6    believed she was retaliated against for her participation in an "ongoing [Department of Fair

7    Employment and Housing ("DFEH")] discrimination investigation and participation in the Goins'

8    class action."[1] (*Id.*) Plaintiff alleges she has suffered deterioration of health, loss of job, and loss

9    of salary, wages, bonuses, and benefits due to wrongful termination. (*Id.*)

10    On April 16, 2021, Plaintiff filed an administrative complaint against Teamsters Local

11    150 with the California Civil Rights Department ("CRD") (formerly, DFEH), and received a right

12    -to-sue letter from the CRD on April 5, 2022. (Doc. No. 9 at 28–31.) On December 6, 2023—just

13    a few weeks after Defendant filed its motion to dismiss, in which Defendant raised the issue of

14    Plaintiff's failure to exhaust administrative remedies under the Fair Employment and Housing

15    Act ("FEHA")—Plaintiff filed a second administrative complaint, this time against Defendant.

16    (*Id.* at 36–37.) Plaintiff received a right to sue letter that same day. (*Id.* at 35.) As noted above,

17    Plaintiff also filed the FAC on December 6, 2023. (Doc. No. 9.)

18    In her FAC, Plaintiff brings the following eleven causes of action against Defendant:

19    disparate treatment in violation of public policy (claim 1); harassment based on gender, age, and

20    sexual orientation in violation of FEHA, California Government Code §§ 12940(j)–(k) (claim 2);

21    failure to prevent discrimination in violation of FEHA, California Government Code §§ 12900, *et*

22    *seq.* (claim 3); intentional infliction of emotional distress (claim 4); breach of contract (claim 5);

23    violation of the Equal Pay Act (claim 6); disability discrimination in violation of FEHA,

24    _____

25    [1] On October 7, 2022, Plaintiff was named as a plaintiff and one of over a dozen proposed class representatives in a first amended complaint filed in a class action brought on behalf of female

26    employees of UPS in the Northern District of California: *Goins et al. v. United Parcel Serv. Inc.*, No. 21-cv-08722-PJH. On April 20, 2023, the court in *Goins* granted in part UPS's motion to

27    dismiss and dismissed Plaintiff Williams and several other plaintiffs from that action based on their failure to exhaust administrative remedies. *See Goins v. United Parcel Serv. Inc.*, No. 21-cv-

28    08722-PJH, 2023 WL 3047388, at *15 (N.D. Cal. Apr. 20, 2023).

1 | California Government Code § 12926, *et seq.* (claim 7); failure to accommodate in violation of

2 | FEHA, California Government Code § 12940(m)(1) (claim 8); unfair competition in violation of

3 | California Business and Professions Code § 17200 (claim 9); wrongful termination in violation of

4 | public policy (claim 10); and retaliation in violation of FEHA, California Government Code

5 | § 12940, *et seq.* (claim 11). (*Id.* at 13–25.)

6 | On January 24, 2024, Defendant filed the pending motion to dismiss all claims in this

7 | action with prejudice.[2] (Doc. No. 13.) Plaintiff filed an opposition to that motion on February 14,

8 | 2024.[3] (Doc. Nos. 17, 18.) Defendant filed a reply thereto on February 16, 2024. (Doc. No. 19.)

9 | /////

10 | /////

11 |

---

[2] Defendant also concurrently filed a request for judicial notice of three sets of documents. (Doc. No. 13-9.) First, Defendant requests the court take judicial notice of the second amended complaint filed in the *Goins* action, as well as the order issued in *Goins* on April 20, 2023. (*Id.*) Pursuant to Federal Rule of Evidence 201(b), a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Because court filings are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned,' pleadings filed and orders issued in related litigation are proper subjects of judicial notice under Rule 201." *McVey v. McVey*, 26 F. Supp. 3d 980, 984 (C.D. Cal. 2014) (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.")). Given Plaintiff Williams was a named plaintiff in *Goins*, the court will take judicial notice of these documents. Second, Defendant requests the court take judicial notice of Plaintiff's administrative complaints to CRD dated April 16, 2021 and December 6, 2023, as well as the right-to-sue letters dated April 5, 2022 and December 6, 2023. (Doc. No. 13-9 at 2.) However, because those documents are attached as exhibits to Plaintiff's FAC in this action, judicial notice is not necessary and Defendant's request as to these documents is denied. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (explaining that in ruling on a motion to dismiss, courts may consider documents outside the pleadings if those documents are attached to the complaint, incorporated by reference in the complaint, or are matters of which judicial notice is taken). Third, Defendant requests the court take judicial notice of UPS's National Master Agreement with the International Brotherhood of Teamsters Agreement for August 1, 2008, through July 31, 2023, and the Northern California Supplemental Agreement between Teamsters Local Unions and UPS for that same period. (Doc. No. 13-9 at 2.) Because it is unclear what specific contract Plaintiff bases her contract claim on, Defendant's request for judicial notice as to these documents is denied.

[3] Plaintiff also filed an evidentiary objection to the entire declaration of Shannon Baisden that Defendant concurrently filed in support of its motion to dismiss. (Doc. No. 13-6.) Plaintiff's boilerplate objection, which offers no argument or analysis, is overruled.

1          **LEGAL STANDARD**

2          A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to

3     dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted.

4     *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A claim may be dismissed for lack of a

5     cognizable legal theory or the absence of sufficient facts to support a cognizable legal

6     theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v.*

7     *Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984)).

8          "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

9     accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

10    U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see*

11    *also* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim

12    showing that the pleader is entitled to relief). A complaint satisfies the plausibility requirement if

13    it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is

14    liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). For

15    purposes of a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed

16    in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336,

17    337–38 (9th Cir. 1996). If a court dismisses certain claims, "[l]eave to amend should be granted

18    unless the district court 'determines that the pleading could not possibly be cured by the

19    allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009)

20    (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

21          **ANALYSIS**

22    **A.    Plaintiff's FEHA Claims (Claims Two, Three, Seven, Eight, and Eleven)**

23          1.    <u>Administrative Exhaustion Under FEHA</u>

24          A plaintiff is required to exhaust all administrative remedies before filing a civil action

25    bringing claims under FEHA based on allegations of discrimination or retaliation. *Chew v. City &*

26    *Cnty. of San Francisco*, 714 F. App'x 687, 690 (9th Cir. 2017).[4] To satisfy the exhaustion

27    _____

28    [4] Citation to the unpublished Ninth Circuit opinions such as those cited here and elsewhere in this
order is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1    requirement, a plaintiff must file a timely and sufficient administrative complaint with the CRD.

2    Cal. Gov. Code §§ 12960, 12965; *see also Rodriguez v. Airborne Express*, 265 F.3d 890, 896 (9th

3    Cir. 2001).

4        FEHA claims are subject to two statutory deadlines: one for filing the CRD administrative

5    complaint and another for filing the civil lawsuit. *Acuna v. San Diego Gas & Elec. Co.*, 217 Cal.

6    App. 4th 1402, 1411 (2013). First, the complaint filed with the CRD "shall not be filed after the

7    expiration of three years from the date upon which the unlawful practice or refusal to cooperate

8    occurred." Cal. Gov. Code § 12960(e)(5). Second, "the person claiming to be aggrieved may

9    bring a civil action . . . within one year from the date of [the CRD's right-to-sue] notice." Cal.

10   Gov. Code § 12965(c)(1)(C). In other words, to satisfy the timing requirements under FEHA, the

11   complainant must file a civil complaint initiating a lawsuit within one year of receiving a right-to-

12   sue notice from the CRD. *See Mitchell v. State Dep't of Pub. Health*, 1 Cal. App. 5th 1000, 1004

13   (2016), *as modified on denial of reh'g* (Aug. 22, 2016). "It is the plaintiff's burden to plead and

14   prove timely exhaustion of administrative remedies." *Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d

15   891, 902 (E.D. Cal. 2017).

16       "Under FEHA, the scope of the [CRD] complaint defines the scope of the subsequent civil

17   action." *Keever v. Mediation Ctr. of San Joaquin*, No. 2:13-cv-00029-KJM-KJN, 2015 WL

18   75194, at *6 (E.D. Cal. Jan. 6, 2015). "To exhaust his or her administrative remedies as to a

19   particular act made unlawful by the FEHA, the claimant must specify that act in the

20   administrative complaint, even if the administrative complaint does specify other cognizable

21   wrongful acts." *Kaur v. Foster Poultry Farms LLC*, 83 Cal. App. 5th 320, 355 (2022) (citation

22   omitted). If a plaintiff alleges conduct in the civil lawsuit that is outside the scope of the charge

23   made in the written administrative complaint, that alleged conduct cannot serve as the basis for a

24   claim because the plaintiff failed to exhaust administrative remedies as to that conduct. *Chew*,

25   714 F. App'x at 690. A plaintiff may, however, rely on allegations of conduct that are "like or

26   reasonably related to the allegations" in the administrative charge to serve as a basis for a

27   claim. *Id.*

28   /////

2.    <u>Plaintiff's First Administrative Complaint</u>

As noted above, Plaintiff filed her first administrative complaint on April 16, 2021, and received a right-to-sue letter on April 5, 2022. (Doc. No. 9 at 28–31.) In that first CRD complaint, Plaintiff brought a charge against the union (Teamsters Local 150), alleging that she experienced discrimination on or before September 30, 2019. Specifically, Plaintiff alleged:

> From 2019 I believe the Union has not properly represented me due [to] my sex/gender (female). On March 13, 2019, I filed a written grievance, when I was forced on unpaid medical leave, with the Union office stating, I believed I could perform the essential job functions of my position, however Dale Wentz, union representative, told me nothing could be done unless I provided a medical note stating I had no medical restrictions/limitations. On September 19, 2019, I do not believe Mario Escobar, shop steward, properly represented me when I reported a sex/gender harassment incident involving a coworker as he did not report what I had reported to him.

(*Id.*) The right-to-sue letter Plaintiff received on April 5, 2022 authorized her to file a civil action "within one year from the date of this letter." (*Id.* at 31.) Notably, Plaintiff did not name Defendant in the caption or body of her April 16, 2021 complaint.

California courts have not yet provided definitive guidance on whether a plaintiff may pursue FEHA clams against a party that was not specifically named in the underlying CRD complaint. "California appellate courts have interpreted [California Government Code § 12960] as establishing that exhaustion is not satisfied unless a plaintiff's administrative charge provides defendant notice of the substance of plaintiff's claims." *Ayala*, 263 F. Supp. 3d at 903 (citing *Medix Ambulance Service, Inc.*, 97 Cal. App. 4th at 117–118 (2002); *Cole v. Antelope Valley Union High School Dist.*, 47 Cal. App. 4th 1505, 1511 (1996); *Martin v. Fisher*, 11 Cal. App. 4th 118, 119–123 (1992)). California appellate courts have also found that if a defendant is not named in either the caption or body of an administrative complaint, then that defendant has not received adequate notice pursuant to FEHA. *See generally Medix Ambulance*, 97 Cal. App. 4th at 116 ("None of these cases held that a harassment case may proceed against one not mentioned in the administrative complaint.").

In its motion, Defendant argues broadly that Plaintiff's failure to name Defendant in her first CRD complaint constitutes a failure to exhaust administrative remedies and precludes

1   Plaintiff from relying on the first CRD complaint to satisfy the exhaustion requirement for her

2   FEHA claims against Defendant in this case. (Doc. No. 13 at 12–13.) Plaintiff vaguely argues in

3   response that "all Plaintiff needed to do was to check the box on the [CRD] form to meet the

4   exhaustion requirement," but does not address Defendant's argument regarding Plaintiff's failure

5   to name Defendant in the CRD complaint. (Doc. No. 18-1 at 10).

6        Here, there is no question that Defendant is not identified by name in the caption or body

7   of Plaintiff's first CRD complaint. Plaintiff named only Teamsters Local 150, included only

8   Teamsters Local 150's address and phone number in the caption, and mentioned by name only

9   other union members in the body of the complaint. (Doc. No. 9 at 27–30.) The CRD complaint

10  does not include Defendant as a respondent. Moreover, Defendant is not mentioned anywhere in

11  the body of the complaint, which does not even indicate that Plaintiff or the individuals named are

12  or were employed by Defendant. These facts distinguish this case from *Ayala*, in which the

13  district court found the plaintiff had exhausted her administrative remedies despite failing to name

14  the defendant company as a respondent in her CRD complaint. 263 F. Supp. 3d at 904. There, the

15  complaint described the individual respondents as employees of the defendant company, the

16  defendant company's address was included as the address for the respondents, the body of the

17  complaint referenced the defendant company multiple times by name, and the right-to-sue letter

18  described the respondents as employees of the defendant company. *Id.* Thus, the court concludes

19  that the lack of reference to Defendant renders the first CRD complaint inadequate to put

20  Defendant on notice of Plaintiff's charges against them and of the possibility that Defendant

21  would be named in a future lawsuit.

22        Therefore, Plaintiff cannot predicate her FEHA claims on the April 16, 2021 CRD

23  complaint.

24        3.    Plaintiff's Second Administrative Complaint

25        Plaintiff filed her second administrative complaint on December 6, 2023, this time against

26  Defendant, and received an immediate right-to-sue letter on the same day. (Doc. No. 9 at 35–37.)

27  Notably, Plaintiff filed her second CRD complaint five months *after* the commencement of this

28  lawsuit against Defendant on August 14, 2023, and only after Defendant filed a motion to dismiss

1   in part on administrative exhaustion grounds.

2          As previously discussed, a plaintiff asserting claims pursuant to FEHA must first exhaust

3   administrative remedies prior to filing a lawsuit in state or federal court. *Harris v. Cnty. of*

4   *Orange*, 682 F.3d 1126, 1135–36 (9th Cir. 2012) (citing *Rojo v. Kliger*, 52 Cal. 3d 65, 83 (1990)

5   ("We agree that exhaustion of the FEHA administrative remedy is a precondition to bringing a

6   civil suit *on a statutory cause of action.*")). Unlike in the Title VII charge-filing requirement

7   context, which is a "non-jurisdictional claim processing rule," *Fort Bend Cnty., Texas v. Davis*,

8   587 U.S. 541, 550 (2019), exhaustion of administrative remedies under FEHA is a "jurisdictional

9   prerequisite to the court." *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 70 (2000) (citation

10  omitted).

11         Because Plaintiff failed to file her second administrative complaint prior to the filing of

12  this lawsuit, Plaintiff has not exhausted her administrative remedies as required under FEHA.

13  Therefore, Defendant's motion to dismiss as to Plaintiff's FEHA claims (claims 2, 3, 7, 8, and 11)

14  will be granted, without leave to amend. *See Ramirez-Castellanos v. Nugget Mkt., Inc.,* No. 2:17-

15  cv-01025-JAM-AC, 2020 WL 2770060, at *4 (E.D. Cal. May 28, 2020) (plaintiffs' FEHA claims

16  failed as a matter of law where plaintiffs had not obtained their right-to-sue notice before filing a

17  lawsuit alleging FEHA claims); *Kobbervig v. M.A.C. Cosms., Inc.*, No. 17-cv-6543-DSF, 2018

18  WL 6177259, at *3 (C.D. Cal. Mar. 26, 2018) (dismissing FEHA claims for failure to exhaust

19  where plaintiffs filed their administrative complaints three months after they filed a civil suit

20  asserting FEHA claims and explaining that "[p]laintiffs are not granted leave to the amend

21  because to assert these claims, [they] must file a new lawsuit"); *Mitchell v. City of Santa Rosa*,

22  No. 08-cv-02698-SI, 2008 WL 4534050, at *5 (N.D. Cal. Oct. 7, 2008) (finding the court lacked

23  jurisdiction over plaintiff's FEHA claim because plaintiff did not receive a right-to-sue letter until

24  after he filed a lawsuit.

25  **B.     Disparate Treatment in Violation of Public Policy (Claim One)**

26         Plaintiff's first claim is titled "Retaliatory Disparate Treatment in Violation of Public

27  Policy" in the caption of the FAC and "Disparate Treatment in Violation of Public Policy" in the

28  claim section. (Doc. No. 9 at 1, 13.) It is unclear from the FAC whether Plaintiff is asserting a

1    common law claim or a FEHA claim.

2        FEHA contains a provision that states it "does not repeal any of the provisions of . . . law

3    of [California] relating to discrimination" on various bases. Cal. Gov't Code § 12993. Further, as

4    discussed by the California Supreme Court, the "common law of [California] provides any

5    number of remedial theories to compensate for injuries 'relating to discrimination.'" *Rojo*, 52 Cal.

6    3d at 74. It is well-settled, for example, that California recognizes a common law action for

7    wrongful termination in violation of public policy, including for sex discrimination. *Badih v.*

8    *Myers*, 36 Cal. App. 4th 1289, 1296 (1995) (allowing Plaintiff to maintain claim for wrongful

9    discharge in violation of public policy because article 1, section 8 of the California Constitution

10   "expresses a fundamental public policy against sex discrimination in employment").

11       Here, however, Plaintiff's first claim does not appear to be a claim for wrongful

12   termination in violation of public policy because she already brings that claim as her tenth claim.

13   (*See* Doc. No. 9 at 23.) Further, the court is not aware of, nor does Plaintiff cite to, any cases that

14   establish a common law claim for disparate treatment in violation of public policy.

15       In addition, it is also unclear whether Plaintiff intends to bring her first claim under

16   FEHA. Notably, Plaintiff does not mention FEHA in her first claim, yet she references "FEHA"

17   explicitly in her seventh and eighth claims and cites FEHA's code provisions in her second, third,

18   and eleventh claims. (Doc. No. 9.) Defendant argues in its motion to dismiss that Plaintiff's first

19   claim is not actually a common law cause of action and may be "some permutation of a FEHA

20   claim." (Doc. No. 13 at 12 n.1.) Plaintiff does not respond to this argument nor clarify in her

21   opposition the basis for her first claim.

22       Thus, the court will grant Defendant's motion to dismiss Plaintiff's first claim with leave

23   to amend. Although Plaintiff had an opportunity to clarify the legal basis for her first claim in her

24   opposition and chose not to do so, it does not appear leave to amend would be futile. The court

25   notes, however, to the extent Plaintiff's first claim is, as Defendant suggests, alleging a violation

26   of FEHA, that claim would be subject to dismissal without leave to amend for the reasons

27   discussed above with regard to Plaintiff's FEHA claims.

28   /////

11

**C.    Intentional Infliction of Emotional Distress Claim (Claim 4)**

To state a claim for intentional infliction of emotional distress ("IIED") under California law, a plaintiff must show "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012) (quoting *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009)). The defendant must also intend to inflict injury with the understanding that injury will result. *Hughes*, 46 Cal. 4th at 1051.

Defendant argues Plaintiff's IIED claim should be dismissed because the FAC includes the "garden-variety" employment discrimination and harassment allegations that are insufficient to state a claim of IIED. (Doc. No. 13 at 17.) Defendant also argues that Plaintiff's IIED claim is preempted by the Worker's Compensation Act ("WCA"). (*Id.*) In her opposition to Defendant's motion, Plaintiff counters that "forcing Plaintiff to endure sexual harassment and discrimination," among other things, are sufficient to state an IIED claim and that her claim is not barred by the WCA. (Doc. No. 18-1 at 17–18.)

Relevant to this claim, Plaintiff alleges Defendant's "conduct in allowing the abuse of Plaintiff as described [in the FAC] was extreme and outrageous and went beyond all bounds of decency." (Doc. No. 9 at 17.) Plaintiff also alleges Defendant "fostered a hostile environment that was resistant to equal opportunities among its employees" in violation of the "California Labor Code." (*Id.*) Further, Plaintiff's IIED claim incorporates the facts previously alleged in the FAC, which necessarily includes her allegations that in February 2016, her supervisor "sexually assaulted and sexually harassed" and made a sexual gesture to her using a large tube package by his groin. (*Id.* at 7–8.)

However, it is unclear as to what "abuse" Plaintiff refers to in her IIED claim. The FAC does not specify conduct by Defendant that was intended to cause Plaintiff severe emotional distress. *See Reynolds v. Shure*, 148 F. Supp. 3d 928, 932 (E.D. Cal. 2015) (noting plaintiff incorporated facts previously alleged in the complaint but did not further explain how defendant's

1    actions were outrageous and or how his distress was severe); *Newman v. San Joaquin Delta Cmty.*

2    *Coll. Dist.*, No. 20-cv-93441-WBS-KJN, 2010 WL 2179964, at *5 (E.D. Cal. May 27, 2010). As

3    currently pled in the FAC, Plaintiff's IIED claim lacks sufficient factual allegations to show that

4    Defendant's conduct was outrageous and intentional, or that Defendant acted with reckless

5    disregard of the possibility of causing emotional distress. *See Dove v. PNS Stores, Inc.*, 982 F.

6    Supp. 1420, 1425 (C.D. Cal. 1997). Indeed, Plaintiff does not clearly allege what specific action

7    taken by Defendant caused her alleged emotional distress.

8            Even if Plaintiff's IIED claim is based on her allegation in the FAC that in February 2016,

9    her supervisor "sexually assaulted" her, Plaintiff does not allege any facts to provide context as to

10   what conduct occurred nor specific allegations regarding what she reported to Defendant's human

11   resources department. Rather, Plaintiff vaguely refers to the sexual assault as "the incident"—

12   without describing the incident—and alleges she reported the incident to human resources but

13   was not contacted thereafter and continued to work under Avery's supervision following the

14   incident. (*Id.* at 6–7.) The court recognizes, however, that Plaintiff may be able to allege

15   additional facts to support her IIED claim because IIED claims have been found to be plausibly

16   alleged where an employee's reports of sexual harassment to their employer went unaddressed.

17   *See Rankins v. United Parcel Serv., Inc.*, No. 23-cv-05785-JSC, 2024 WL 3416508, at *3 (N.D.

18   Cal. July 15, 2024) (permitting an IIED claim against employer based on sexual harassment by a

19   coworker that went unaddressed despite plaintiff's complaints to employer); *Deering v. Lassen*

20   *Cmty. Coll. Dist.*, No. 2:07-cv-01521 JAM-DAD, 2008 WL 4570339, at *8 (E.D. Cal. Oct. 14,

21   2008) ("[I]f properly pled, [s]exual harassment will constitute the outrageous behavior element of

22   a cause of action of intentional infliction of emotional distress."); s*ee also Matthews v.*

23   *Pinchback*, No. 2:22-cv-1329-DJC-CSK, 2024 WL 5182165, at *4 (E.D. Cal. Dec. 20, 2024)

24   (plaintiff's claim for IIED premised on sexual assault and battery allegations survived a motion to

25   dismiss where plaintiff alleged his penis was penetrated without his consent to collect DNA but

26   that the procedure served no legitimate investigatory purpose and was conducted "solely to

27   humiliate, degrade, and intimidate [plaintiff]").

28           Additionally, Plaintiff fails to plead any facts to show she suffered serious emotional

1    distress sufficient to state a claim for IIED. Instead, Plaintiff alleges in conclusory fashion that

2    she experienced "deterioration of health." (Doc. No. 9 at 18.) But Plaintiff offers no facts to

3    substantiate her general allegation that she suffered from a "deterioration of health" or that this

4    alleged harm amounted to serious emotional distress. *See McKenna v. Permanente Med. Grp.,*

5    *Inc.*, 894 F. Supp. 2d 1258, 1275 (E.D. Cal. 2012) (dismissing plaintiff's IIED claim where

6    plaintiff failed to plead facts showing she suffered from conditions including embarrassment,

7    humiliation, anxiety, and anguish). For these reasons, the court finds Plaintiff's allegations are

8    insufficient to state a cognizable IIED claim.

9          Next, the court turns to Defendant's argument that Plaintiff's IIED claim should be

10    dismissed without leave to amend because that claim is also preempted by the WCA's exclusivity

11    doctrine. The WCA is the exclusive remedy for claims of IIED when the claims arise out of

12    action taken within the context of the employment relationship. *Carlos v. Old Dominion Freight*

13    *Line, Inc.*, 726 F. App'x 576, 579 (9th Cir. 2018); *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d

14    148, 233 (1987); Cal. Lab. Code §§ 3600, *et seq.* WCA preemption applies even where an

15    employer's acts within the employment relationship are "calculated to cause severe emotional

16    disturbance." *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1099 (1992), *overruled on other grounds by*

17    *Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66 (1998). However, there exists a "longstanding view that

18    unlawful discrimination and retaliation in violation of FEHA falls outside the compensation

19    bargain" and that "claims of such intentional infliction of emotional distress based on such

20    discrimination and relation" are not covered by WCA exclusivity. *Light v. Dep't of Parks &*

21    *Recreation*, 14 Cal. App. 5th 75, 101 (2017).

22          Here, Plaintiff's generalized allegations do not provide sufficient detail for the court to

23    determine at this point whether her IIED claim would be subject to the WCA exclusivity doctrine.

24    Therefore, the court will grant Defendant's motion to dismiss Plaintiff's IIED claim with leave to

25    amend.

26    **D.     Breach of Contract Claim (Claim 5)**

27          The elements of a breach of contract claim under California law are: (1) existence of a

28    valid contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the

defendant; and (4) damages. *Ahmadi v. United Cont'l Holdings, Inc.*, No. 1:14-cv-00264-LJO, 2014 WL 1281056, at *3 (E.D. Cal. Mar. 31, 2014) (citing *First Com. Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001)).

Plaintiff alleges she "entered into an employment contract with Defendant," and "Defendant agreed to pay [P]laintiff's hourly wages . . . ." (Doc. No. 9 at 18.) Plaintiff alleges the existence of the employment contract is substantiated by "several paystubs" that Defendant provided to Plaintiff. (*Id.*) Plaintiff alleges that she "fulfilled her duties and conditions under the contract" and "has been harmed" because of her wrongful termination. (*Id.*) In her FAC, Plaintiff does not identify which specific contract she alleges Defendant breached.

Defendant argues in its motion to dismiss that Plaintiff's breach of contract claim is preempted by federal law, specifically section 301 of the Labor Management Relations Act ("LMRA"). (Doc. No. 13 at 18.) Defendant argues Plaintiff was an at-will employee and that her employment relationship with Defendant was governed by the UPS's National Master Agreement with the International Brotherhood of Teamsters and its Northern California Supplemental Agreement with Teamster Local Union No. 150 (collectively, "collective bargaining agreements"). (*Id.*) In her opposition, Plaintiff counters that her breach of contract claim was "not created by, or dependent on, the collective bargaining agreement which does not provide an outlet for gender discrimination, physical assault and fat jokes." (Doc. No. 18-1 at 20.) Plaintiff further argues her breach of contract claim is not preempted because Plaintiff "did not account for these types of harms when she entered the bargain." (*Id.*)

Plaintiff appears to suggest that her breach of contract claim is not based on the collective bargaining agreements because the types of harms identified by Plaintiff were not contemplated by the agreement. (*Id.*) To that end, Plaintiff fails to allege sufficient facts to state the first element of a breach of contract claim—the existence of a contract. Plaintiff does not attach to her original complaint or FAC an employment contract or identify in her opposition the specific employment contract she refers to, let alone provisions of that contract Defendant apparently violated. Plaintiff provides no citation in her opposition to support that pay stubs can alone establish the existence of an implied employment contract nor is the court aware of any case that

15

1    supports this proposition. A rule allowing pay stubs alone to support the establishment of an

2    employment contract "would effectively serve to eliminate or severely undermine the existence of

3    at-will employment in California." *Nanthavong v. United Parcel Serv.*, *Inc.*, No. 2:23-cv-02670-

4    DJC-DB, 2024 WL 626707, at *3 (E.D. Cal. Feb. 14, 2024).

5         Simply put, Plaintiff cannot allege the existence of a contract based solely on pay stubs.

6    Because it is possible that Plaintiff may have a separate basis for alleging the existence of an

7    employment contract with Defendant, the court will grant Defendant's motion to dismiss

8    Plaintiff's breach of contract claim with leave to amend.

9    **E.    Equal Pay Act Violation Claim (Claim 6)**

10        The Equal Pay Act prohibits sex-based wage discrimination by providing that no

11    employer shall discriminate by paying different wages to employees of opposite sexes within an

12    establishment for jobs that require substantially equal skill, effort, and responsibility, and which

13    are performed under similar working conditions. 29 U.S.C. § 206(d)(1); *E.E.O.C. v. Maricopa*

14    *Cnty. Cmty. Coll. Dist.*, 736 F.2d 510, 513 (9th Cir. 1984).

15        Defendant argues that Plaintiff's Equal Pay Act claim should be dismissed because

16    Plaintiff does not allege facts sufficient to state a cognizable claim. (Doc. No. 13 at 21.)

17    According to Defendant, Plaintiff fails to allege: (1) that violations occurred within the "same

18    establishment" as opposite-sex comparators; (2) any facts about the work she performed for

19    which she was underpaid; and (3) how her work was substantially similar to work performed by

20    men under similar working conditions. (*Id.*) The court agrees and finds that Plaintiff's allegations

21    as to this claim are cast as legal conclusions and are deficient of factual support. Plaintiff vaguely

22    alleges in her complaint that she is "similarly situated with respect to her claims that UPS paid

23    and promoted her less than her male counterparts, because she was forced to termination instead

24    of male counterparts who also had disabilities." (Doc. No. 9 at 19.) Plaintiff's allegation that

25    unidentified male employees were "similarly situated" is merely a legal conclusion and is

26    otherwise unsupported by allegations of facts elsewhere in the complaint. Plaintiff's complaint

27    does not allege any facts to demonstrate she performed her role under similar working conditions

28    and that her role required similar skill, effort, and responsibility as that of her male counterparts.

1   *See Werner v. Advance Newhouse P'ship, LLC*, No. 1:13-cv-01259-LJO, 2013 WL 4487475, at

2   *5 (E.D. Cal. Aug. 19, 2013) (dismissing Equal Pay Act claim because the plaintiff's allegation

3   she was paid less than similarly situated male employees was conclusory and not entitled to the

4   assumption of truth absent factual support); *Davis v. Inmar, Inc.*, No. 21-cv-03779-SBA, 2022

5   WL 3722122, at *5 (N.D. Cal. Aug. 29, 2022) (dismissing Equal Pay Act claim where plaintiff

6   alleged only that an unidentified male colleague performed substantially similar work and was

7   paid more).

8          Therefore, the court will grant Defendant's motion to dismiss Plaintiff's Equal Pay Act

9   claim. Because it is possible that Plaintiff may be able to allege additional facts to support this

10   claim, the court will grant Plaintiff leave to amend this claim.

11   **F.      Unfair Competition Law Claim (Claim 9)**

12          To state a UCL claim, "a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent

13   business act or practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'" *Lippitt v.*

14   *Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003), *as amended* (Sept. 22,

15   2003) (quoting Cal. Bus. & Prof. Code § 17200). Plaintiff's UCL claim is predicated on the

16   "unlawful" prong, because Plaintiff alleges that Defendant violated the UCL "by virtue of illegal

17   conduct" and "engaging in business practices that are unlawful under other state or federal laws."

18   (Doc. No. 9 at 22.)

19          To state a claim under the unlawful prong of the UCL, the alleged conduct must violate a

20   "borrowed" law. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). No

21   independent right to sue exists under the "unlawful" prong of the UCL. *Mejia v. Chipotle*

22   *Mexican Grill, Inc.*, 793 F. App'x 519, 521 (9th Cir. 2019).

23          Here, Plaintiff points to the discrimination and harassment provisions under FEHA as the

24   predicate for her claim under the unlawful prong. (Doc. No. 9 at 22.) Because Plaintiff's FEHA

25   claims fail due to Plaintiff's failure to exhaust administrative remedies, any UCL claim predicated

26   upon them also fail. *See Valladares v. Specialized Loan Servicing, LLC,* No. 1:23-cv-01224-

27   NOD-JSAB, 2023 WL 8435575, at *4 (E.D. Cal. Dec. 5, 2023) (dismissing plaintiff's UCL claim

28   where plaintiff failed to properly state a claim for a violation of any underlying law); *Krantz v. BT*

17

1  *Visual Images, L.L.C.*, 89 Cal. App. 4th 164, 178 (2001) ("[Claims] for relief under the unfair

2  competition law []—stand or fall depending on the fate of the antecedent substantive causes of

3  action.").

4          Therefore, the court will dismiss Plaintiff's UCL claim. To the extent Plaintiff's UCL

5  claim is predicated on violations of FEHA, that claim will be dismissed without leave to amend

6  because the court is not granting leave to amend on Plaintiff's FEHA claims. But to the extent

7  Plaintiff's UCL claim is predicated on violations of Equal Pay Act, Plaintiff's UCL claim will be

8  dismissed with leave to amend.

9  **G.      Wrongful Termination Claim (Claim 10)**

10         To state a common law claim for wrongful termination in violation of public policy,

11  Plaintiff must allege: (1) she was employed by UPS; (2) UPS discharged her; (3) "violation of

12  public policy substantially motivated the discharge," and (4) the discharge caused her harm. *See*

13  *Diego v. Pilgrim United Church of Christ*, 231 Cal. App. 4th 913, 920 (2014). The policy must be

14  "(1) delineated in either constitutional or statutory provisions; (2) public in the sense that it inures

15  to the benefit of the public rather than serving merely the interests of the individual; (3) well

16  established at the time of the discharge; and (4) substantial and fundamental." *Id.* (citations and

17  quotation marks omitted).

18         Defendant moves to dismiss Plaintiff's wrongful termination claim on the grounds that it

19  is a derivative claim and all of Plaintiff's other claims fail. (Doc. No. 13 at 23.) Plaintiff offers no

20  argument in her opposition to rebut this assertion. Nor does Plaintiff provide any clarity or proffer

21  any additional allegations that she would include in a further amended pleading to clarify the

22  policy she refers to in her wrongful termination claim.

23         It is unclear to the court on what "constitutional or statutory provisions" Plaintiff bases her

24  wrongful termination claim. To the extent that Plaintiff's claim is derivative of the FEHA claims,

25  the wrongful termination claim is subject to dismissal for the same reasons that Plaintiff's FEHA

26  claims are being dismissed without leave to amend. However, because it is not clear whether

27  Plaintiff is basing this claim on other "constitutional or statutory provisions," the court will grant

28  Defendant's motion to dismiss Plaintiff's claim for wrongful termination with leave to amend.

1    *See Nanthavong*, 2024 WL 626707, at *6 (plaintiff's derivative wrongful termination claim

2    survived where the court only partially granted defendant's motion to dismiss).

3                                    **CONCLUSION**

4            For the reasons explained above:

5    1.        Defendant's request for judicial notice (Doc. No. 13-9) is GRANTED in part and

6             DENIED in part as specified herein;

7    2.        Defendant's motion to dismiss (Doc. No. 13) is GRANTED in part, as follows:

8            a.        Plaintiff's first claim for disparate treatment in violation of public policy is

9                     dismissed with leave to amend;

10           b.        Plaintiff's second claim for harassment based on gender, age, and sexual

11                     orientation is dismissed without leave to amend;

12           c.        Plaintiff's third claim for failure to prevent discrimination is dismissed

13                     without leave to amend;

14           d.        Plaintiff's fourth claim for intentional infliction of emotional distress is

15                     dismissed with leave to amend;

16           e.        Plaintiff's fifth claim for breach of contract is dismissed with leave to

17                     amend;

18           f.        Plaintiff's sixth claim for violation of the Equal Pay Act is dismissed with

19                     leave to amend;

20           g.        Plaintiff's seventh claim for disability discrimination is dismissed without

21                     leave to amend;

22           h.        Plaintiff's eighth claim for failure to accommodate is dismissed without

23                     leave to amend;

24           i.        Plaintiff's ninth claim for unfair business practice under the UCL is

25                     dismissed with leave to amend, in part, as specified herein;

26           j.        Plaintiff's tenth claim for wrongful termination in violation of public

27                     policy is dismissed with leave to amend; and

28           k.        Plaintiff's eleventh claim for retaliation is dismissed without leave to

19

amend;

3.     Within twenty-one (21) days of the date of entry of this order, Plaintiff shall file a second amended complaint to amend the claims for which leave to amend has been granted, or alternatively, file a notice of her intent not to file a second amended complaint; and

4.     Plaintiff is warned that her failure to comply with this order may result in dismissal of this action due to Plaintiff's failure to prosecute.

IT IS SO ORDERED.

Dated:   **May 14, 2025**

Dena Coggins
United States District Judge

20