UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SAMANTHA WILLIAMS,

Plaintiff,

v.

UNITED PARCEL SERVICE, INC.,

Defendant.

No. 23-cv-02585-DC-SCR

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

(Doc. No. 32)

This matter is before the court on Defendant United Parcel Service, Inc.'s ("UPS") motion to dismiss. (Doc. No. 32.) Pursuant to Local Rule 230(g), the pending motion was taken under submission to be decided on the papers. (Doc. No. 35.) For the reasons explained below, the court will grant in part and deny in part Defendant's motion to dismiss.

**BACKGROUND**

Plaintiff Samantha Williams filed this employment action in the Sacramento County Superior Court against Defendant, her former employer, and Does 1–20 on August 14, 2023. (Doc. No. 1-1 at 2.) On November 8, 2023, Defendant removed this action to this court. (Doc. No. 1.) Defendant filed a motion to dismiss on November 15, 2023. (Doc. No. 3.) In lieu of filing an opposition to that motion, Plaintiff filed the first amended complaint on December 6, 2023, as a matter of course pursuant to Federal Rule of Civil Procedure 15. (Doc. No. 9.) On January 24, 2024, Defendant filed a motion to dismiss. (Doc. No. 13.) On May 14, 2025, the court granted

Defendant's motion to dismiss, specifically dismissing Plaintiff's claims under the Fair Employment and Housing Act ("FEHA") without leave to amend and her remaining claims with leave to amend. (Doc. No. 29.) On June 4, 2025, Plaintiff filed the operative second amended complaint ("SAC"). (Doc. No. 31.) In her SAC, Plaintiff alleges the following:

Defendant hired Plaintiff as a "Package Handler" in October 2008, at its hub in West Sacramento, California. (*Id.* at ¶ 24.) In January 2016, Plaintiff's supervisor, Brian Avery, "harassed" Plaintiff, singled Plaintiff out amongst her colleagues, and criticized her for briefly using her phone while at work. (*Id.* at ¶ 26.) In February 2016, Avery "sexually assaulted and sexually harassed" Plaintiff. (*Id.* at ¶ 27.) Thereafter, Plaintiff reported the incident to human resources at UPS, but she was not contacted by anyone from that office. (*Id.*) Plaintiff continued to work under Avery's supervision following the incident. (*Id.*) On February 3, 2016, a male UPS employee positioned his radio in front of his groin and made a sexual gesture in front of Plaintiff. (*Id.* at ¶ 28.) That same day, Avery made a similar gesture using a large tube package towards Plaintiff, and asked Plaintiff, "Oh yeah Sam, is that big enough for you?" (*Id.* at ¶ 29.) On February 4, 2016, Avery hit Plaintiff and two other UPS employees with a tube package because "he thought it was funny." (*Id.* at ¶ 30.)

In April 2016, Plaintiff "experienced a great deal of harassment and retaliation from coworkers," including that her supervisor, Reed, harassed her about "turning off the conveyor belt." (*Id.* at ¶ 31.) Plaintiff spoke about this with a shop steward, and supervisors Reed and Diane Iboua, but the situation continued. (*Id.*) In May 2016, Iboua informed Plaintiff's coworkers that Plaintiff made a "corporate report and that there would be an audit because of [Plaintiff]." (*Id.* at ¶ 32.) Plaintiff's coworker, Carlos Zuniga, witnessed this incident and went with Plaintiff to human resources. (*Id.*) Plaintiff "reported the whistleblowing to the UPS Ethics Hotline," and the matter was referred to human resources. (*Id.*) Thereafter, Plaintiff was "moved to an area away from the sort aisle for unloading packages." (*Id.*)

Plaintiff signed up to become a "package car driver" and completed trainings and tests associated with that position. (*Id.*) Plaintiff completed the requisite training in "early 2017." (*Id.*) On June 8, 2017, Plaintiff began working as a probationary package car driver. (*Id.* at ¶ 33.) On

June 16, 2017, a driver supervisor with a "hub shop steward" disqualified Plaintiff, without involving a "driver shop steward." (*Id.*) Plaintiff raised the disqualification to Teamsters business agent Dale Wentz for investigation. (*Id.*) On July 5, 2017, Plaintiff transferred from the twilight shift to the day shift. (*Id.* at ¶ 34.) Plaintiff continued to work as a hub sorter and began doing on-call utility driving. (*Id.*)

In September 2018, Plaintiff was involved in an automobile accident while driving for UPS's West Sacramento Hub. (*Id.* at ¶ 35.) After retraining, Plaintiff continued to drive for UPS. (*Id.*) On December 10, 2018, Plaintiff was involved in a second automobile accident while "performing package car driving." (*Id.* at ¶ 36.) Plaintiff was "informed by River City driving supervisors that there would be a callback for a space and visibility test by Brian Steele," but she never received any updates regarding the test. (*Id.*)

On December 6, 2018, Plaintiff was involved in a personal automobile accident. (*Id.*) Plaintiff's car was totaled, and she received "chiropractic care" in connection with that accident. (*Id.*)

On March 4, 2019, Plaintiff witnessed an employee shut off a conveyer belt because boxes were piling up and the situation became unsafe. (*Id.* at ¶ 41.) Plaintiff witnessed her supervisor, Matty Ford, yell at the employee for turning off the conveyer belt. (*Id.*) On March 5, 2019, Plaintiff and Ford "began yelling at each other" after the "boxes were up to [Plaintiff's] knees." (*Id.* at ¶ 38.) Ford told another employee to clear the conveyer belt, and yelled at that employee, "don't get your panties in a bunch." (*Id.* at ¶ 41.) On March 7, 2019, Plaintiff reported a "safety hazard" to human resources. (*Id.* at ¶ 43.) The next day, Plaintiff filed a complaint through the Occupational Safety and Health Administration ("OSHA") concerning "continuous safety issues and hostile intimidation." (*Id.* at ¶ 44.) A full-time supervisor, Bobby, and Ford, confronted Plaintiff about her human resources complaint in front of coworkers, and Plaintiff reported this incident to Teamsters business agent Wentz. (*Id.*)

On March 11, 2019, Plaintiff began working in the "Irregular Packages" area even though she requested a "switch with a lower seniority sort, which was denied." (*Id.* at ¶ 45.) The following day, Plaintiff met with the hub manager, a supervisor, and a shop steward regarding

ongoing safety issues. (*Id.* at ¶ 46.) On March 13, 2019, Plaintiff provided a note from a chiropractor to a supervisor that stated she should not lift packages weighing more than 70 pounds. (*Id.* at ¶ 47.) Plaintiff's supervisors denied "the request to switch work areas based on the note." (*Id.*) A shop steward told Plaintiff that "assistance was only available in the irregular packaging area . . . ." (*Id.*)

On March 15, 2019, Plaintiff filed a retaliation complaint with the Department of Industrial Relations and a grievance concerning missed wages, but she received no response. (*Id.* at ¶ 49.) On March 18, 2019, Plaintiff's chiropractor removed her work restrictions "due to concerns about payment," and Plaintiff returned to work as normal. (*Id.* at ¶ 50.)

On March 25, 2019, packages "were getting backed up and falling on the floor," and Ford asked Plaintiff "why she was holding up the line . . . ." (*Id.* at ¶ 51.) The following day, Plaintiff contacted another human resources representative and stated she believed she was being harassed and retaliated against by Ford. (*Id.* at ¶ 52.) Plaintiff has repeatedly felt unsafe at her job and believes management does not care about the wellbeing of employees. (*Id.* at ¶ 55.)

On May 19, 2020, Plaintiff witnessed her female colleague "get sexually harassed by an auditor named Chris," when he inappropriately whistled at her. (*Id.* at ¶ 56.) Plaintiff witnessed another female coworker get harassed when a male colleague told her that "he was surprised she was doing so well due to her being a woman." (*Id.* at ¶ 58.) In October 2019, Chris told Plaintiff that "they should have more girls drive tugs." (*Id.* at ¶ 59.) Chris also told Plaintiff that that she did not "have enough seniority" to be working in "irregular pit scanning and labeling irregular packages." (*Id.* at ¶ 60.) Plaintiff's male colleagues mocked her with a high-pitched voice. (*Id.* at ¶ 66.) Plaintiff's reports to human resources have gone unresolved. (*Id.*)

Plaintiff has been repeatedly passed up for promotions in favor of male colleagues with significantly less seniority than her. (*Id.* at ¶ 64.) Three male colleagues were hired in 2013 and 2014, and were promoted to full-time drivers before Plaintiff, even though she was hired in 2008.

Plaintiff was subsequently injured and went on disability from November 2021 until November 2022. (*Id.* at ¶ 67.) Plaintiff alleges Defendant failed to engage in the interactive process when they offered Plaintiff jobs that were too far away from home (over 75 miles) and

violated restrictions by requiring Plaintiff to perform repetitive tasks. (*Id.*) In November 2022, Defendant stopped communicating with Plaintiff, and Plaintiff felt that she had been fired. (*Id.* at ¶ 68.) Plaintiff believed she was retaliated against for her participation in an "ongoing [Department of Fair Employment and Housing ("DFEH")] discrimination investigation and participation in the Goins' class action."[1] (*Id.*) Plaintiff alleges she has suffered deterioration of health, loss of job, and loss of salary, wages, bonuses, and benefits due to wrongful termination. (*Id.* at ¶ 69.)

In her SAC, Plaintiff brings the following six causes of action against Defendant: disparate treatment in violation of public policy: wrongful demotion in violation of public policy (claim 1); intentional infliction of emotional distress (claim 2); breach of contract (claim 3); violation of the Equal Pay Act (claim 4); unfair competition in violation of California Business and Professions Code § 17200 (claim 5); and wrongful termination in violation of public policy (claim 6). (*Id.* at 14–26.)

On June 18, 2025, Defendant filed the pending motion to dismiss all claims in this action with prejudice. (Doc. No. 32.) Plaintiff filed an opposition to that motion on July 2, 2025. (Doc. No. 33.) Defendant filed a reply thereto on July 11, 2025. (Doc. No. 34.)

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A claim may be dismissed for lack of a cognizable legal theory or the absence of sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984)).

---

[1] On October 7, 2022, Plaintiff was named as a plaintiff and one of over a dozen proposed class representatives in a first amended complaint filed in a class action brought on behalf of female employees of UPS in the Northern District of California: *Goins et al. v. United Parcel Serv. Inc.*, No. 21-cv-08722-PJH. On April 20, 2023, the court in *Goins* granted in part UPS's motion to dismiss and dismissed Plaintiff Williams and several other plaintiffs from that action based on their failure to exhaust administrative remedies. *See Goins v. United Parcel Serv. Inc.*, No. 21-cv-08722-PJH, 2023 WL 3047388, at *15 (N.D. Cal. Apr. 20, 2023).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief). A complaint satisfies the plausibility requirement if it contains sufficient facts for the court to "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). For purposes of a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). If a court dismisses certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phx.*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

## ANALYSIS

### A. Disparate Treatment in Violation of Public Policy (Claim One)

Plaintiff's first claim is titled "Retaliatory Disparate Treatment in Violation of Public Policy" in the caption of the SAC. (Doc. No. 31 at 1.) In the body of the SAC, Plaintiff titles her claim "Disparate Treatment in Violation of Public Policy: Wrongful Demotion in Violation of Public Policy." (Doc. No. 31 at 14.) Plaintiff then in her opposition seems to identify the claim as one for wrongful demotion in violation of public policy, and then one for a "public policy retaliation claim." (Doc. No. 33 at 8–9.) Also in Plaintiff's opposition, Plaintiff cites two authorities that purportedly set out the elements of a wrongful demotion claim based on public policy. (*Id.* at 9.) However, as Defendant points out, these authorities set out the elements to establish a prima facie case of retaliation under the FEHA. (Doc. No. 34 at 2); *see Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005); *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 214–15 (2013)). Further, to the extent Plaintiff seeks to state a claim for wrongful termination in violation of public policy, she already brings that claim as her sixth cause of action. (Doc. No. 31 at 24.) Accordingly, the court will dismiss Plaintiff's first claim with leave to

amend so that Plaintiff can clarify what claim she is alleging in her first claim and how it is distinct from her sixth claim.

**B. Intentional Infliction of Emotional Distress (Claim 2)**

To state a claim for intentional infliction of emotional distress ("IIED") under California law, a plaintiff must show "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012) (quoting *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009)). The defendant must also intend to inflict injury with the understanding that injury will result. *Hughes*, 46 Cal. 4th at 1051.

Plaintiff alleges that over the course of her employment, she was subjected to sexual harassment by her supervisor and coworkers in 2016, 2019, and 2020. (Doc. No. 31 at ¶¶ 97–99.) Plaintiff also alleges Defendant knew of this conduct through Plaintiff's repeated complaints, but that Defendant failed to investigate, discipline the offending supervisor, or remove him from a supervisory role over Plaintiff. (*Id.* at ¶¶ 96–101, 106.) Defendant argues Plaintiff's IIED claim should be dismissed because the SAC includes the "garden-variety" employment discrimination and harassment allegations that are insufficient to state a claim of IIED. (Doc. No. 31 at 8.) Defendant also argues that Plaintiff's IIED claim is preempted by the Worker's Compensation Act ("WCA"). (*Id.*)

Despite Defendant's argument, under California law, sexual harassment can satisfy the outrageous conduct element of an IIED claim. *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 618 (Ct. App. 1989) ("Given an employee's fundamental, civil right to a discrimination free work environment . . . by its very nature, sexual harassment in the [workplace] is outrageous conduct as it exceeds all bounds of decency usually tolerated by a decent society."); s*ee also Blackshire v. Cnty. of Yuba*, 648 F. Supp. 3d 1221, 1241 (E.D. Cal. 2023).

Plaintiff alleges Defendant's conduct in allowing Plaintiff's coworkers and supervisor to sexually harass her in 2016 and again in 2019 and 2020 was extreme and outrageous. (Doc. No.

31 at ¶ 104.) Plaintiff asserts she reported her supervisor Brian Avery's sexual harassment in 2016, but Defendant took no corrective action to rectify the situation. (*Id.* at ¶ 97.) Plaintiff alleges that in September 2019 and May 2020 she was again subject to "sexually explicit comments that were unwelcome and offensive," after which Plaintiff submitted a formal complaint and Defendant failed to intervene. (*Id.* at ¶ 99.) Such conduct may be deemed outrageous behavior for the purposes of an IIED claim. *See Rankins v. United Parcel Serv., Inc.*, No. 23-cv-05785-JSC, 2024 WL 3416508, at *3 (N.D. Cal. July 15, 2024) (permitting an IIED claim against employer based on sexual harassment by a coworker that went unaddressed despite plaintiff's complaints to employer); *Blackshire*, 648 F. Supp. 3d at 1240 (recognizing sexual harassment as outrageous conduct) (citing *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009)); *Smith v. BP Lubricants USA Inc.*, 64 Cal. App. 5th 138, 148 (2021) (permitting an IIED claim based on offensive comments related to race by a manager in the workplace).

Additionally, Plaintiff has sufficiently pled that she suffered emotional distress due to Defendant's reckless disregard for the probability that its inaction would lead to Plaintiff's emotional distress. (Doc. No. 31 at ¶ 104.) Plaintiff alleges she was diagnosed with Post-Traumatic Stress Disorder, and that through 2022 and 2023, she "remained under continuous mental health treatment, receiving therapy, psychotropic medications, and behavioral health support." (*Id.* at ¶ 101, 102); *cf. McKenna v. Permanente Med. Grp., Inc.*, 894 F. Supp. 2d 1258, 1275 (E.D. Cal. 2012) (dismissing plaintiff's IIED claim where plaintiff failed to plead facts to support she suffered from symptoms and conditions including embarrassment, humiliation, anxiety, and anguish). Therefore, Plaintiff has alleged the requisite elements of an IIED claim.

Next, the court turns to Defendant's argument that Plaintiff's IIED claim should be dismissed without leave to amend because that claim is also preempted by the WCA's exclusivity doctrine. The WCA is the exclusive remedy for claims of IIED when the claims arise out of action taken within the context of the employment relationship. *Carlos v. Old Dominion Freight Line, Inc.*, 726 F. App'x 576, 579 (9th Cir. 2018)[2]; *Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d

[2] Citation to the unpublished Ninth Circuit opinions such as those cited here and elsewhere in this order is appropriate pursuant to Ninth Circuit Rule 36-3(b).

148, 233 (1987); Cal. Lab. Code §§ 3600, *et seq.* WCA preemption applies even where an employer's acts within the employment relationship are characterized as "calculated to cause severe emotional disturbance." *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1099 (1992), *overruled on other grounds by Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66 (1998). However, there exists a "long-standing view that unlawful discrimination and retaliation in violation of FEHA falls outside the compensation bargain" and that "claims of intentional infliction of emotional distress based on such discrimination and retaliation" are not covered by WCA exclusivity. *Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 101 (2017). Indeed, "if properly pled, sexual harassment will constitute the outrageous behavior element of a cause of action for intentional infliction of emotional distress." *Mofrad v. United Parcel Serv., Inc.*, No. 23-cv-01899-AMO, 2025 WL 2308492, at *10 (N.D. Cal. Aug. 11, 2025), *modified*, No. 23-cv-01899-AMO, 2025 WL 2374111 (N.D. Cal. Aug. 15, 2025). Construing the sexual harassment allegations in the light most favorable to Plaintiff, the court finds the WCA does not preempt this claim as pled. Therefore, the court will deny Defendant's motion to dismiss Plaintiff's IIED claim.

**C. Breach of Contract (Claim 3)**

Defendant argues in its motion to dismiss that Plaintiff's breach of contract claim is preempted by federal law, specifically section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. (Doc. No. 32 at 9–10.) Plaintiff argues in opposition that her breach of contract claim is not preempted by the LMRA because it does "not require interpretation of ambiguous" provisions of the National Master United Parcel Service Agreement (the "CBA"), which is the agreement Plaintiff alleges Defendant breached. (Doc. No. 33 at 18.)

Section 301(a) of the LMRA provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). State law claims that require interpretation of the terms of a collective bargaining agreement between an employer and a union are preempted by the exclusive federal jurisdiction of the LMRA. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213 (1985). The Supreme Court has made clear "that a suit in state court alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." *Id.* at 210 (citing *Teamsters v. Lucas Flour Co.,* 369 U.S.

95, 103 (1962)). The Supreme Court has further expanded section 301 preemption to claims that are "substantially dependent on analysis of a collective-bargaining agreement" or arise from rights created by a collective bargaining agreement. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 394 (1987) (citation omitted); *see also Cook v. Lindsay Olive Growers*, 911 F.2d 233, 237 (9th Cir. 1990). A court "may look to a [collective bargaining agreement] to determine whether a plaintiff's claim necessarily implicates its terms without 'interpreting' the agreement . . . ." *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 693 (9th Cir. 2001), *as amended* (Aug. 27, 2001) (citation omitted).

Here, Plaintiff alleges that she was employed by Defendant, and that the CBA "govern[ed] the terms and conditions of her employment . . . ." (Doc. No. 31 at ¶ 115.) Plaintiff does not just reference the CBA in the SAC, she alleges that Defendant breached the CBA by violating Articles 7 (grievance procedures), 8 (union representation), 18 (safety and health), and 37 (discrimination and harassment) of the CBA. (*Id.* at ¶¶ 113–136.) For the court to determine whether Defendant breached the specified provisions, the court would have to interpret the terms within the CBA and decide how they apply. For example, the court would have to determine whether Plaintiff's alleged demotion violated Article 7's "just cause" requirement, and whether Defendant's response to Plaintiff's complaints of harassment satisfied the requirements outlined in Article 37. (*See id.* at ¶¶ 117–120, 123, 124). Because Plaintiff's breach of contract claim requires the court to interpret specific provisions of the CBA, that claim is preempted by section 301 of the LMRA. *See Hidalgo v. Progress Found.*, No. 02-cv-02881-CRB, 2003 WL 1888862, at *3 (N.D. Cal. Apr. 10, 2003) (dismissing plaintiff's breach of contract claim because it arose out of defendants' alleged failure to follow grievance procedures in the collective bargaining agreement and was therefore preempted by LMRA), *aff'd*, 83 F. App'x 890 (9th Cir. 2003); *Hillebrand v. United Parcel Serv. Inc.*, No. 25-cv-02220-PHX-DJH, 2026 WL 632367, at *5 (D. Ariz. Mar. 6, 2026) (finding plaintiff's breach of contract claim to be preempted by LMRA because the "breach of contract claim is entirely planted in the CBA" and the court would need to interpret the CBA to resolve the claim).

Accordingly, the court will dismiss Plaintiff's breach of contract claim without leave to

amend.

**D. Equal Pay Act Violation Claim (Claim 4)**

The Equal Pay Act prohibits sex-based wage discrimination by providing that no employer shall discriminate by paying different wages to employees of opposite sexes within an establishment for jobs that require substantially equal skill, effort, and responsibility, and which are performed under similar working conditions. 29 U.S.C. § 206(d)(1); *E.E.O.C. v. Maricopa Cnty. Cmty. Coll. Dist.*, 736 F.2d 510, 513 (9th Cir. 1984). To state a claim under the Equal Pay Act, a plaintiff must allege "that employees of the opposite sex were paid different wages for equal work." *Flores v. Red Robin*, No. 1:17-cv-00396-LJO-SKO, 2017 WL 1437647, at *3 (E.D. Cal. Apr. 24, 2017) (citing *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1073–74 (9th Cir. 1999)). A plaintiff must also allege that the discrimination in the payment of wages occurred "within a single establishment." *Bartlet v. Berlitz Sch. of Language of Am., Inc.*, 698 F.2d 1003, 1005 (9th Cir. 1983).

As Defendant points out, Plaintiff's claim suffers from two primary deficiencies. First, Plaintiff does not allege anywhere in her SAC that the pay discrimination occurred at the same establishment. *See Nanthavong v. United Parcel Serv., Inc.*, No. 2:23-cv-02670-DJC-DB, 2024 WL 626707, at *6 (E.D. Cal. Feb. 14, 2024) (dismissing plaintiff's Equal Pay Act claim where plaintiff did not allege that the pay discrimination occurred at the same establishment). Second, though Plaintiff alleges that four specific male coworkers were promoted to full-time driver roles before Plaintiff despite having less seniority (Doc. No. 31 at ¶¶ 137, 138), she does not allege that these male comparators and Plaintiff received unequal pay for contemporaneously performing the same role. Plaintiff's allegation that she was "denied equivalent advancement and compensation," is conclusory, and read in the context of the surrounding allegations relays disparities in promotion to full-time driver positions rather than unequal pay for work performed in the same role. (*Id.* at ¶ 141.) Thus, Plaintiff's allegations are insufficient to state an Equal Pay Act claim. *See Anderson v. Benedict*, No. 10-cv-02833-LKK, 2012 WL 952863, at *4 (E.D. Cal. Mar. 20, 2012) ("An Equal Pay Act case requires a plaintiff to prove discrimination by showing that employees of the opposite sex were paid different wages for equal work.") (citing *Stanley v. Univ.*

*of S. Cal.*, 178 F.3d 1069, 1073–74 (9th Cir. 1999)).

Therefore, the court will grant Defendant's motion to dismiss Plaintiff's Equal Pay Act claim. However, because it is possible that Plaintiff may be able to allege additional facts to support this claim, the court will grant Plaintiff leave to amend this claim.

**E. Unfair Competition Law Claim (Claim 5)**

To state a UCL claim, "a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent business act or practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'" *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003), *as amended* (Sept. 22, 2003) (quoting Cal. Bus. & Prof. Code § 17200). Plaintiff's UCL claim is predicated on the "unlawful" prong because Plaintiff alleges that Defendant violated the UCL by engaging "in unlawful and unfair business practices . . . ." (Doc. No. 31 at ¶ 147.)

To state a claim under the unlawful prong of the UCL, the alleged conduct must violate a "borrowed" law. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). No independent right to sue exists under the "unlawful" prong of the UCL. *Mejia v. Chipotle Mexican Grill, Inc.*, 793 F. App'x 519, 521 (9th Cir. 2019). Here, Plaintiff points to the federal Equal Pay Act and California Labor Code § 1197.5—the California Equal Pay Act—as being the borrowed laws. (Doc. No. 31 at ¶ 147.) "The California Equal Pay Act is nearly identical to the federal statute and subject to the same analysis." *Goins v. United Parcel Serv. Inc.*, No. 21-cv-08722-PJH, 2022 WL 17652798, at *2 (N.D. Cal. Dec. 13, 2022) (citing *Green v. Par Pools Inc.*, 111 Cal. App. 4th 620, 623 (2003)).

As the court has outlined above, Plaintiff has failed to state a claim under the federal Equal Pay Act and therefore cannot state a claim under the unlawful prong predicated on the Equal Pay Act. For the same reasons, Plaintiff cannot predicate her claim on a violation of the California Equal Pay Act. *See Valladares v. Specialized Loan Servicing, LLC,* No. 1:23-cv-01224-NODJ-SAB, 2023 WL 8435575, at *4 (E.D. Cal. Dec. 5, 2023) (dismissing plaintiff's UCL claim where plaintiff failed to properly state a claim for a violation of any underlying law); *Krantz v. BT Visual Images, L.L.C.*, 89 Cal. App. 4th 164, 178 (2001) (emphasizing that claims "for relief under the unfair competition law (Bus. & Prof. Code, § 17200 *et seq.*)—stand or fall

depending on the fate of the antecedent substantive causes of action").

Plaintiff also argues that her UCL claim is not solely derivative of her Equal Pay Act claim, but rather, the claim is also predicated on violations of California Code §§ 1102.5 and 6310. (Doc. No. 33 at 23.) This argument is unavailing because Plaintiff in her SAC specifically identifies the Equal Pay Act and California Labor Code § 1197.5 as the predicate laws for her claim under the UCL. Accordingly, Plaintiff's UCL claim will be dismissed with leave to amend.

**F. Wrongful Termination Claim (Claim 6)**

To state a common law claim for wrongful termination in violation of public policy, Plaintiff must allege: (1) she was employed by UPS; (2) UPS discharged her; (3) "violation of public policy substantially motivated the discharge," and (4) the discharge caused her harm. *See Diego v. Pilgrim United Church of Christ*, 231 Cal. App. 4th 913, 920 (2014) (citation omitted). The policy must be "(1) delineated in either constitutional or statutory provisions; (2) public in the sense that it inures to the benefit of the public rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental." *Id.* (citations and quotation marks omitted).

Plaintiff identifies six separate public policy predicates allegedly violated by her termination: Article I, Section I of the California Constitution; Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*); the federal Equal Pay Act; the California Equal Pay Act; and California Labor Code §§ 1102.5 and 98.6. (Doc. No. 31 at ¶ 153.) Three of these are unsupported by allegations in the SAC: Plaintiff does not otherwise mention California Labor Code § 98.6 in the SAC; a claim under Title VII requires allegations that similarly situated comparators were treated more favorably, *Hawn v. Exec. Jet Mgmt. Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010), which Plaintiff does not allege; and there are no facts plead in the SAC alleging that Defendant violated Article 1, Section 1, which requires a showing that Plaintiff had a legally protected privacy interest that Defendant invaded, *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1271 (9th Cir. 1998). The remaining public policy predicates appear to be derivative of Plaintiff's first claim for disparate treatment in violation of public policy and third claim for violation of the Equal Pay Act, and accordingly the claim fails on that basis as well.

*Veto v. Boeing Co.*, No. 8:24-cv-00509-DOC-KES, 2024 WL 5036760, at *5 (C.D. Cal. Oct. 23, 2024) (finding that plaintiff's wrongful termination claim failed where it was based on a statutory claim that also failed), *aff'd*, No. 24-7060, 2026 WL 323716 (9th Cir. Feb. 6, 2026). Plaintiff's claim also fails to the extent that it is based on the California Equal Pay Act because "it is nearly identical to the federal statute and subject to the same analysis." *Goins*, 2022 WL 17652798, at *2 (citation omitted).

Further, Plaintiff has not pled that she was discharged by Defendant. Plaintiff in her first claim alleges that on November 10, 2022, Defendant "stripped her of her supervisory role and demoted her to a non-supervisory, part-time hourly position." (Doc. No. 31 at ¶ 90.) Plaintiff also alleges that in November 2022, Defendant "simply stopped communication and [P]laintiff felt that she was fired." (*Id.* at ¶ 68.) Indeed, Plaintiff has not pled that she was factually separated from employment. Further, to the extent Plaintiff seeks to proceed on a constructive discharge theory, Plaintiff has not pled the required elements. Specifically, Plaintiff has not alleged that "working conditions were so intolerable that a reasonable person would have felt compelled to resign." *Hollins v. Wilkie*, No. 19-cv-02201-DMS-JLB, 2021 WL 1906462, at *7 (S.D. Cal. May 12, 2021) (citing *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004)).

Accordingly, the court will grant Defendant's motion to dismiss Plaintiff's claim for wrongful termination with leave to amend.

**CONCLUSION**

For the reasons explained above:

1. Defendant's motion to dismiss (Doc. No. 32) is GRANTED IN PART and DENIED IN PART, as follows:
   a. Plaintiff's first claim for disparate treatment in violation of public policy is dismissed with leave to amend;
   b. Defendant's motion to dismiss Plaintiff's second claim for intentional infliction of emotional distress is denied;
   c. Plaintiff's third claim for breach of contract is dismissed without leave to amend;

d. Plaintiff's fourth claim for violation of the Equal Pay Act is dismissed with leave to amend;

e. Plaintiff's fifth claim under the UCL is dismissed with leave to amend;

f. Plaintiff's sixth claim for wrongful termination in violation of public policy is dismissed with leave to amend;

2. Within fourteen (14) days of the date of entry of this order, Plaintiff shall file a third amended complaint to amend the claims for which leave to amend has been granted, or alternatively, file a notice of her intent not to file a third amended complaint; and

3. If Plaintiff opts to file a third amended complaint, Defendant UPS shall file their response within twenty-one (21) days.

IT IS SO ORDERED.

Dated: **September 17, 2026**

Dena Coggins
United States District Judge